No. 97-179

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 44

IN RE THE WAGE CLAIM OF
SHARON LANGAGER,

Claimant, Respondent, and Cross-Appellant,

v.

CRAZY CREEK PRODUCTS, INC.,

Respondent, Appellant, and Cross-Respondent.

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Carbon,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kent E. Young, Attorney at Law, Red Lodge, Montana

For Respondent:

Sharon Langager, Pro Se, Roberts, Montana

For Intervenor State of Montana:

Robert Campbell, Legal Services, Department of Labor
and Industry, Helena, Montana

Submitted on Briefs: December 11, 1997

Decided:   March 3, 1998
Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1   On April 24, 1996, claimant Sharon Langager filed an action in the District Court for the Thirteenth Judicial District in Carbon County, seeking judicial review of an order issued by the Department of Labor and Industry's Board of Personnel Appeals.  The order denied Langager's request that her employer, Crazy Creek Products, Inc., be required to compensate her for two weeks of unused vacation time.  On December 27, 1996, the District Court issued its order reversing the decision of the Board of Personnel Appeals, and granting a judgment in Langager's favor and against Crazy Creek in an amount equal to one week of vacation pay plus penalties.  It is from this order that Crazy Creek appeals, and Langager cross-appeals. For the reasons discussed below, we reverse.

¶2   We find the following issues dispositive on appeal:

¶3   1.   Did the District Court err in concluding that Crazy Creek's personnel manual did not apply to Langager and thus did not alter the terms of her employment?

¶4   2.   Did the Board of Personnel Appeals err in concluding that Langager was not entitled to vacation pay pursuant to the terms of Crazy Creek's personnel manual?

FACTUAL AND PROCEDURAL BACKGROUND

¶5   Langager began working for Crazy Creek on June 3, 1992, at which time Crazy Creek had a verbal policy regarding vacation time pursuant to which each employee was entitled to one week of paid vacation upon completion of one full year of employment.  The verbal policy additionally provided that an employee would earn one week of paid vacation after completing each succeeding year of employment.  For eligible employees to take advantage of accrued vacation, Crazy Creek required only that they provide the company with thirty-days' notice.

¶6   Langager continued to work for Crazy Creek until June 6, 1994.  In February 1994, several months prior to Langager's separation, Crazy Creek adopted a written manual of Employment Benefits and Policies For All Personnel (personnel manual).  The personnel manual modified the company's policy with respect to paid vacation, providing

specifically
as follows:

    Vacation: CCP provides one week paid vacation per year after the completion
    of the first year of employment (1st anniversary date).  After the completion
    of the second year of employment (2nd anniversary date) CCP will provide
    two weeks paid vacation per year.

    Employees must use their vacation within the year after it is earned.  Vacation
    does not carry over from year to year.  (ie. At the end of the first year an
    employee has one week of paid vacation accrued.  Vacation must be taken
    before the end of the second year - 2nd anniversary date.)  Vacation must be
    used all at once in consecutive days.

    If a company holiday falls within the vacation period it will be considered as
    a paid holiday and not vacation time.  This day of vacation can be used either
    at the beginning or the end of the vacation time.

    An employee must work the regularly scheduled work days before and after
    the paid vacation period in order to be eligible to receive vacation pay.

    Vacations are allowed on a first come first served basis.  In the event more
    than one employee requests the same days as another, management reserves
    the right to deny the second request received at their discretion.

    Requests for vacation should be made at least 30 days prior to the time
    requested.  Please plan ahead.

¶7    Crazy Creek held a meeting on February 3, 1994, during which it provided each of
its employees, including Langager, with a copy of the new personnel manual.  On
February 8, 1994, Crazy Creek convened a second meeting, at which Langager was present,
for the purpose of discussing the personnel manual.  In February 1994, following distribution
of the personnel manual, Langager asked for and received permission to take her two weeks
of vacation in late June of that year.


¶8    In early June 1994, Langager secured other employment.  Thus, on June 6, 1994,
Langager provided Crazy Creek with notice that she intended to quit her job two weeks later,
at the start of her scheduled vacation.  Upon learning of Langager's plans, however, the
Crazy Creek manager informed her that she would not receive any vacation pay if she did
not return to work following her vacation.  In response, Langager opted to terminate her
employment effective June 6, 1994, and thus did not work her regular shift either prior to or
following her scheduled vacation period.

¶9    Crazy Creek did not provide Langager with two weeks of vacation pay following

her
separation from the company.  Thus, on July 5, 1994, Langager filed a wage claim with the
Montana  Department of Labor and Industry (DOL), claiming entitlement to $520 in vacation
pay.  On July 28, 1994, DOL compliance specialist Jim Dobbins authored a written
determination in which he ruled that Crazy Creek owed Langager two weeks of vacation pay,
in an amount of $520, along with penalties pursuant to § 39-3-206, MCA.

¶10  Crazy Creek subsequently requested a hearing, which was conducted telephonically
by DOL hearing officer Stan Gerke on June 1, 1995.  On October 13, 1995, the Hearings
Bureau issued its findings of  fact, conclusions of law, and order in which it ordered that
Crazy Creek pay Langager $520 for two weeks of earned vacation, as well as $572 in
penalties pursuant to § 39-3-206, MCA.

¶11  Crazy Creek appealed to the DOL Board of Personnel Appeals, which issued its
findings of fact, conclusions of law, and order on March 25, 1996.  The Board of Personnel
Appeals reversed the hearing officer's decision, concluding that because Langager did not
work the shifts prior to and after her vacation period, she did not qualify for vacation pay
pursuant to the terms set forth in Crazy Creek's personnel manual.  The Board of Personnel
Appeals thus held that Crazy Creek did not owe Langager the vacation pay to which she
claimed entitlement.

¶12  Langager, acting pro-se, chose to appeal the Board of Personnel Appeals' decision and
filed a petition for judicial review in District Court on April 24, 1996.  On June 3, 1996, the
DOL filed a motion to intervene, which the District Court granted in an order dated June 26,
1996.  On December 27, 1996, the District Court issued an order reversing the Board of
Personnel Appeals' determination that Langager was not entitled  to vacation pay.  The
District Court instead concluded that Crazy Creek's personnel manual did not apply to
Langager, and that she was entitled to recover one week of vacation pay pursuant to the
company's prior verbal vacation policy, as well as penalties.  Crazy Creek filed a notice of
appeal on February 21, 1997, and Langager filed a notice of cross-appeal on March 6, 1997.

## DISCUSSION

¶13  A district court must review an administrative agency's findings of fact to determine
"whether the findings are clearly erroneous in view of the reliable, probative and substantial

evidence in the whole record." State Personnel Div. of Dep't of Admin. v. Board of Personnel
Appeals, Div. of Dep't of Labor and Industry (1992), 255 Mont. 507, 511, 844 P.2d 68, 71
(citing Department of Revenue v. United Parcel Service, Inc. (1992), 252 Mont. 476, 482,
830 P.2d 1259, 1263); see also § 2-4-704, MCA. Furthermore, the district court will uphold
an agency's conclusion of law "if the agency's interpretation of the law is correct." State
Personnel Division of Dep't of Admin., 255 Mont. at 511, 844 P.2d at 71 (citing Steer, Inc.
v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603). We in turn
employ the same standards when reviewing the district court's decision, and must accordingly determine whether an agency's findings of fact are clearly erroneous and whether
its conclusions of law were correct. See Swan Corp. v. Department of Revenue (1988), 232
Mont. 210, 213, 755 P.2d 1388, 1390.

ISSUE 1

¶14 Did the District Court err in concluding that Crazy Creek's personnel manual did not
apply to Langager and thus did not alter the terms of her employment?

¶15 In its order reversing the decision of the Board of Personnel Appeals, the District
Court ultimately concluded that the paid vacation policy contained in Crazy Creek's written
personnel manual did not apply to Langager, but that the terms of her employment were
instead governed by the verbal vacation policy in effect at the time she began working for
Crazy Creek in June 1992. In so concluding, the court relied upon our decision in Gates v.
Life of Montana Ins. Co (1982), 196 Mont. 178, 183, 638 P.2d 1063, 1066, in which we held
that "[a]n employee handbook distributed after the employee is hired does not become a part
of that employee's contract." In Gates, we concluded that an employee handbook distributed
two years after the plaintiff was hired "constituted a unilateral statement of company policies
and procedures" and that it could not have modified the employee's contract "because there
was no new and independent consideration for its terms" and because "its terms were not
bargained for." Gates, 196 Mont. at 183, 638 P.2d at 1066.

¶16 In the present case, the court noted that Crazy Creek had adopted its personnel manual
long after Langager was hired, and reasoned that because "[t]he parties do not argue

and the record does not reflect that the new terms were bargained for, nor that there was new and independent consideration," the "new manual does not constitute a modification of the terms of the claimant's employment." The court thus concluded the verbal vacation policy in effect at the time Langager was hired controlled the present case.

¶17 The court noted that, pursuant to Crazy Creek's verbal policy, Langager became eligible for one week of paid vacation upon completion of her second year of employment, and that to take advantage of that accumulated vacation she had only to put in her request for vacation at least thirty days in advance. The court observed that Langager had met the thirty-day requirement, and thus held she was entitled to receive one week of vacation pay pursuant to the provisions of the verbal vacation policy, but not the two weeks of vacation pay to which she claimed entitlement. Because the court concluded that Crazy Creek's written personnel manual did not apply to Langager, whether or not she had worked the shifts prior to and following her scheduled vacation was of no ultimate consequence to the court's analysis.

¶18 On appeal, Crazy Creek first argues the District Court erroneously exceeded the proper scope of its review when it found that the administrative record "does not reflect that the new terms were bargained for nor that there was new and independent consideration" and accordingly concluded that "the vacation policy applicable to [Langager] is the verbal policy in place at the time she began her employment at Crazy Creek Products, Inc." Crazy Creek argues that the administrative record contains no specific findings with respect to the presence of bargained for exchange or new and independent consideration, and thus suggests the court erroneously substituted its own judgment for that of the agency, and reached a legal conclusion with respect to the applicability of Crazy Creek's personnel manual based upon assumed facts about which there existed no specific agency findings. Crazy Creek points to § 2-4-704, MCA, and asserts the District Court was without statutory authority to reverse the Board of Appeals' decision as it did, and that its only option was to remand the case for additional findings on the questions of bargained for exchange and new consideration.

¶19  Crazy Creek next argues that, even if the court was acting within the scope of its
reviewing authority, it erred in determining that the administrative record contained no
evidence of bargained for exchange and new consideration, and in concluding that Crazy
Creek's personnel manual thus did not apply to Langager.  Instead, Crazy Creek argues that
the administrative record contains sufficient evidence of bargained for exchange and new
consideration to support the conclusion, implicit in the Board of Appeal's decision denying
Langager's request for vacation pay, that Crazy Creek's personnel manual effectively
modified the terms of Langager's employment.

¶20  Following a review of the administrative record, we note that this case is factually
distinguishable from the Gates case, and determine the elements of bargained for exchange
and independent consideration are indeed present.  In Gates, a former employee brought an
action for wrongful discharge against her employer, asserting in part that her employer
"breached the contractual terms of her employment as set forth in [an] employee handbook."
Gates, 196 Mont. at 183, 638 P.2d at 1066.    We held that where the employer had merely
distributed the handbook two years after the plaintiff was hired, there was no new and
independent consideration for its terms and  its terms were not bargained for.  Gates, 196
Mont. at 183, 638 P.2d at 1066.  In the present case, however, the administrative record
indicates that Crazy Creek not only distributed its personnel manual to each employee, but
additionally convened a second meeting on February 8, 1994, during which it asked if any
employees had questions regarding the provisions of the manual.  That Langager not only
received a copy of the manual, but also attended this second meeting during which the
employer asked for input from its employees, indicates the manual's terms were sufficiently
bargained for.  Moreover, Langager continued to work for Crazy Creek, thereby supplying
the necessary consideration.

¶21  Based on the foregoing, we hold the District Court erred in finding no evidence of
bargained for exchange and new consideration under the circumstances of this case, and hold
the court consequently erred in concluding Crazy Creek's personnel manual did not

apply to
Langager.  Because the record as a whole contains substantial evidence indicating that the
terms of the personnel manual were bargained for, and that there was new and independent
consideration, we conclude that remand for additional findings is unnecessary and that the
District Court did not exceed the proper scope of its review.

ISSUE 2

¶22  Did the Board of Personnel Appeals err in concluding that Langager was not entitled
to vacation pay pursuant to the terms of Crazy Creek's personnel manual?

¶23  Having determined that Crazy Creek's personnel manual did in fact apply to Langager,
we must reach that question not addressed by the District Court and determine whether the
Board of Personnel Appeals erred in concluding Langager was not entitled to recover two
weeks of vacation pay.  We review an agency's conclusion of law to determine whether it is
a correct interpretation of the law.  See, e.g., State Personnel Div. of Dep't of Admin., 255
Mont. at 511, 844 P.2d at 71.

¶24  In a 1949 opinion, which remains valid authority for the resolution of vacation pay
disputes, the Attorney General concluded that "vacation pay which has been earned and is
due and owing must be considered in the same category as wages and is collectable in the
same manner and under the same statutes as are wages."  23 Op. Att'y Gen. 151, 153 (1949);
See generally, Morris v. C.C. Communications Corp. (1977), 175 Mont. 23, 571 P.2d 1163.
The parties to the present action do not dispute the fact that Montana law recognizes vacation
pay as a wage, and do not take issue with the following conclusions by the Board of Personnel Appeals:

> Employers are under no legal obligation to provide employees with a paid
> vacation.  The decision to grant paid vacations to employees is left to the
> discretion of an employer.  Although there is no legal obligation on the part of
> an employer to provide a paid vacation, once the decision is made to grant a
> paid vacation, the employer is obligated to pay that which is earned and due
> and owing.

¶25  Crazy Creek correctly identifies the critical question on appeal as whether Langager
has actually earned the paid vacation to which she claims entitlement, and whether Crazy

Creeks is thus "obligated to pay that which is earned and due and owing." Faced with the
similar question of whether vacation pay is due and owing under a given set of
circumstances, other courts have recognized that "[a]n employer is free to set the terms and
conditions of employment and compensation and the employee is free to accept or reject
those conditions." Rowell v. Jones & Vining, Inc. (Me. 1987), 524 A.2d 1208, 1211. See
also Roberts v. Public Finance Co. (Or. 1983), 662 P.2d 330, 332 (similarly recognizing that
"[a]n employer is free to set the terms and conditions of the work and of the compensation
and the employee may accept or reject those conditions.").

¶26 Thus, to determine whether vacation pay is due and owing in the present case, we
must look to the terms of the employment contract as set forth in Crazy Creek's personnel
manual. See, e.g., Roberts, 662 P.2d at 332 (recognizing that "[t]he employment contract
itself will control the employee's right to vacation."). In its decision denying Langager's
request for vacation pay, the Board of Personnel Appeals evaluated the requirements set forth
in Crazy Creek's personnel manual and concluded that Langager "had not yet earned her
vacation pay and is not entitled to recover the wages claimed for vacation pay." In so
concluding, the Board of Personnel Appeals reasoned that Langager "did not fulfill the
requirements delineated by the employer to qualify for vacation pay" because she did not
comply with the personnel manual's requirement that she "work both the day prior to and the
day after taking vacation." Thus, the Board of Personnel Appeals ultimately held that,
"[b]ecause of the failure of claimant to fulfill the contractual prerequisite to vacation pay, she
is not entitled to vacation pay."

¶27 Review of Crazy Creek's personnel manual reveals a number of "contractual
prerequisites" to an employee's entitlement to vacation pay. For example, Crazy Creek
requires that each employee work for at least one year before accruing any paid vacation.
Crazy Creek's personnel manual additionally requires that, to take advantage of accrued
vacation, employees must take vacation in consecutive days within the next calendar year,
request vacation thirty days in advance, and work their regularly scheduled shifts both before
and after a scheduled vacation. In light of these provisions, Crazy Creek argues that

employees do not earn paid vacation until they comply with the conditions set forth in the
company's personnel manual, including the requirement that they report to work for their
regularly scheduled shifts immediately prior to and following a paid vacation period.  Crazy
Creek asserts, and the Board of Personnel Appeals concluded, that because Langager failed
to work her regularly scheduled shifts both prior to and following her scheduled vacation,
she never earned any paid vacation, and is not entitled to prevail in the present action.

¶28  Crazy Creek's personnel manual specifically states that the company "provides one
week paid vacation per year after the completion of the first year of employment (1st
anniversary date)" and  explains that "[a]t the end of the first year an employee has one week
of paid vacation accrued." (Emphasis added.)  Furthermore, the manual explicitly provides
that "[a]fter the completion of the second year of employment (2nd anniversary date) CCP
will provide two weeks paid vacation per year." (Emphasis added.)  Thus, in no uncertain
terms, Crazy Creek states that it "will provide two weeks paid vacation" to employees who
reach their second anniversary date.

¶29  In the present case, it is undisputed that Langager completed her second year of
employment with Crazy Creek on June 3, 1994.  According to the above-cited portion of
Crazy Creek's personnel manual, Langager had two weeks of paid vacation accrued when she
completed the second year of her employment with Crazy Creek on June 3, 1994.  Despite
the fact that Crazy Creek's personnel manual explicitly states that the company "will provide
two weeks paid vacation" to employees, like Langager, who complete their second year of
employment, Crazy Creek argues that because Langager quit her job and therefore failed to
comply with the condition that she work the shifts immediately preceding and following her
scheduled vacation, she never earned any paid vacation.  Implicit in Crazy Creek's argument
is its attempted differentiation between accrued vacation and earned vacation, and its
apparent contention that an employee may have accrued two weeks of vacation after working
for the company for two years, but not yet earned it.  Indeed, pursuant to Crazy Creek's
argument in this case, Langager could not have earned paid vacation until that

vacation had
come to an end.


¶30  Notwithstanding Crazy Creek's argument to the contrary, we conclude that vacation
pay is earned by virtue of an employee's labor and once it has accrued, it has by definition
been earned.   See, e.g.,  Wolf v. Sam's Town Furniture, Inc. (N.M. Ct. App. 1995), 904 P.2d
52, 57 (recognizing that "[a]ccrued vacation is based upon vacation time earned . . . .");
Kistler v. Redwoods Community College Dist. (Cal. Ct. App. 1993), 19 Cal. Rptr. 2d 417,
421 (equating "vacation pay which is to be earned in the future" with vacation pay "which
has not yet accrued").  Pursuant to the terms of Crazy Creek's own personnel manual, and
by virtue of her two years of labor for the company, Langager had accrued, or earned, two
weeks of paid vacation by the time of her June 3, 1994, second anniversary of employment.
We recognize that an employer may, as did Crazy Creek in the present case, place reasonable
restrictions upon the accrual of paid vacation.  We conclude, however, that once an employee
has accrued paid vacation pursuant to the terms of his or her employment contract, an
employer may not then impose conditions subsequent which would, if unmet, effectively
divest an employee of that accrued vacation.


¶31  Crazy Creek argues employees only earn paid vacation if they comply with the
personnel manual's additional requirements and take their accrued paid vacation in
consecutive days within the next calendar year, request vacation thirty days in advance, and
work their regularly scheduled shifts both before and after vacation.  Termed conditions
precedent by Crazy Creek, these contractual requirements are, in effect, conditions
subsequent which do not affect the accrual of paid vacation which occurs, pursuant to the
terms of Crazy Creek's personnel manual, upon each anniversary of employment.  Instead,
these contractual requirements affect an employee's ability to take advantage of accrued
vacation and, if unmet, divest that employee of accrued vacation.  In the present case, the fact
that Langager failed to fulfill Crazy Creek's requirements that she report to work for the
shifts immediately preceding and following her vacation effectively divested her of her two
weeks vacation already accrued pursuant to the explicit terms of the company's own
personnel manual.  Moreover, we note the inherent inconsistency of a vacation policy
pursuant to which an employee cannot earn paid vacation until that vacation has come

to an
end.

¶32  Based on the foregoing, we conclude the Board of Personnel Appeals erred in concluding that Langager was not entitled to recover two weeks of vacation pay from Crazy Creek, and that the District Court similarly erred in concluding Langager was entitled to one week of vacation pay pursuant to Crazy Creek's verbal vacation policy.  We remand to the District Court for a determination of appropriate penalties, if any, pursuant to § 39-3-105, MCA, and § 39-3-206, MCA.

/S/  JIM REGNIER

We Concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART


Justice W. William Leaphart, specially concurring.

¶33  I specially concur in the Court's holding that vacation pay is earned by virtue of an employee's labor and once it has accrued, it has been "earned" and cannot be divested by a condition subsequent; e.g., that an employee work the next shift after having taken a vacation. I write to address what I see as the fallacy in the dissent's position. The dissent argues that the employer is entitled to fashion reasonable requirements pertaining to the earning and using of vacation benefits granted to the employee.  I agree to the extent that the employer imposes conditions precedent on the awarding of vacation pay.  If, however, as the dissent seems to acknowledge, vacation pay is recognized as the equivalent of a "wage," then vacation pay, like a wage, cannot be conditioned upon performance of conditions subsequent.  We would certainly not, for example,  uphold an employer's policy which provides that an employee will not be paid her wage for the month unless she returns and works the first week of the succeeding month.  If the employee works the month of March, she has earned her pay and is entitled to be paid her wage for that month regardless of whether she works at all in April.

¶34  Langager earned her vacation pay when she completed the second year of her employment.  The condition subsequent,  that she work the shift following her

vacation, does
not pertain to whether she "earned" the vacation, rather it pertains to whether she will be
paid for the vacation she earned.  Conditions which purport to divest an employee of that
which the employee has earned are not reasonable and should not be upheld.

/S/  W. WILLIAM LEAPHART

Justice James C. Nelson specially concurs and dissents.

¶35  I concur in the Court's discussion of and in its conclusion that, once earned, vacation
pay is a wage collectible in the same manner and under the same statutes as are wages.  I also
agree that, within the limits imposed by the constitution or by law, an employer is free to set
the terms and conditions of employment and compensation and that the employee is free to
accept or reject such conditions and compensation.  Finally, I  agree that the critical question
in the case at bar is whether Langager earned the vacation pay to which she claims
entitlement.  On this question, I would hold that she has not.  Rather, I would reverse the
District Court and affirm the conclusion of the Board of Personnel Appeals that Langager
"did not fulfill the requirements delineated by the employer to qualify for vacation pay"
because she did not comply with the personnel manual's requirement that she "work both the
day prior to and the day after taking vacation."  Because Langager did not fulfill this
contractual prerequisite, she is not entitled to vacation pay.

¶36  As to issue 1, I do not see any particular need for our lengthy discussion of Gates v.
Life of Montana Ins. Co. (1982), 196 Mont. 178, 638 P.2d 1063.  In the proceedings below,
the parties did not argue whether there was a bargained for agreement with new
consideration.  Indeed, both Crazy Creek's and Langager's position was always that the new
agreement did apply.  There is no question that Langager accepted the new agreement.  She
sought to take advantage of it.  If she had taken a contrary position, then she could not claim
two weeks vacation pay, as that was only payable under the new policy that went into effect
after she was hired.  Whether there was a bargained for exchange and new consideration
under Gates is a non-issue.

¶37   As to issue 2, there is no dispute that, absent a contractual or statutory requirement to the contrary, the decision to grant employees vacation, paid or otherwise, is in the discretion of the employer.  Moreover, we appear to be agreed that, in exercising this discretion, the employer is entitled to fashion reasonable requirements and restrictions pertaining to earning and using the vacation benefits granted.

¶38   I part company with the majority at the point it concludes that "in no uncertain terms, Crazy Creek states that it 'will provide two weeks paid vacation' to employees who reach their second anniversary date."  That misrepresents Crazy Creek's vacation policy.  In fact, Crazy Creek agreed that it would provide its employees two weeks vacation pay subject to various restrictions and requirements.  These included, among others, that "[a]n employee must work the regularly scheduled work days before and after the paid vacation period in order to be eligible to receive vacation pay." (Italics added.)

¶39   Crazy Creek implemented this policy to benefit its employees by granting them two weeks paid vacation, as opposed to the one week to which they had been previously entitled.  Crazy Creek also adopted the new vacation policy to benefit its own business operations by discouraging seasonal turn-over in its work force and by providing incentives for employees to remain in the company's service.

¶40   In order to "earn" or to become eligible for vacation pay, employees had to comply with the conditions clearly set forth in the employee manual.  There is no dispute that Langager knew of the requirements to become eligible for vacation pay; she simply did not want to abide by those.  She wanted the benefits of the employer's agreement to provide vacation pay without any of the concomitant obligations that the agreement imposed upon her.  Unfortunately, in agreeing with this tack, the majority has effectively and improperly re-written the employment contract.

> In the construction of an instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.  Where there

are several provisions or particulars, such a construction is, if possible, to be

adopted as will give effect to all.

Section 1-4-101, MCA. See also Talley v. Flathead Valley Community College (1993), 259
Mont. 479, 487, 857 P.2d 701, 705, cert. denied 510 U.S. 1044, 114 S.Ct. 691, 126 L. Ed.2d
658 (1994) (court may not disregard the express language of an employment contract and
read into the agreement expectations of employment not supported by the contractual
language used by the parties).

¶41  It is for these same reasons that I disagree with Justice Leaphart's concurrence. He
assumes that Langager "earned" her vacation pay merely by completing two years of
employment. She did not. The employer defined at what point vacation pay was "earned"
and that definition included certain prerequisites with which Langager did not comply. The
only way Justice Leaphart's view can be valid is to judicially write out of the employee
manual the very conditions that Langager agreed to in accepting the new vacation pay policy.
Since she never earned vacation pay, she had no wages to claim.

¶42  Furthermore, the majority's reliance on Wolf v. Sam's Town Furniture, Inc. (N.M. Ct.
App. 1995), 904 P.2d 52, is unavailing. Unlike the case at bar, Wolf did not involve any
issue of when, under the terms of a specific written employment policy, vacation time
"accrues" or is "earned". The same is true of Kistler v. Redwoods Community College
District (Cal. Ct. App. 1993), 19 Cal. Reptr. 2d 417. While in that case the Court ruled that
the employer could not divest the employee of vacation pay already earned (a point with
which no one argues), the Court also conceded the obvious--that by specific order or general
policy, the employer could bar the accrual of future vacation pay absent compliance with the
conditions which the order or policy imposed. Kistler, 19 Cal. Reptr. 2d at 421.

¶43  More to the point is the decision in Sweet v. Stormont Vail Regional Med.Ctr. (Kan.
1982), 647 P.2d 1274, wherein the Court held that the failure of a hospital employee to give
two weeks prior notice of termination as required by the handbook precluded any
determination that her unused vacation time constituted "earned wages." As the Court stated:

It is apparent to this court that by the Claimant's agreement Claimant
only became entitled to vacation pay, hence "earned" it, in one of two ways:
scheduling time off with pay and continuing her employment, or giving

Respondent two weeks prior notice of her intent to resign. The nature of Respondent's service to the public requires a stable work force and requiring notice or continued employment for entitlement to vacation pay was Respondent's means of maintaining that work force. The notice requirement for "earning" unused accumulated vacation pay was consciously drafted for this purpose. Claimant's failure to comply with either of the requirements of her agreement with Respondent prevented her from earning vacation pay.

Sweet, 647 P.2d at 1281(quoting the trial court's analysis).

¶44  Similarly, the Court in New Mexico State Labor and Indus. Comm. v. Deming Nat'l Bank (N.M. 1981), 634 P.2d 695, upheld the employer's right to condition payment of vacation pay on the employee's compliance with the Bank's personnel guidelines. Accord
Bondio v. Joseph Binder, Inc. (La.Ct.App. 1946), 24 So.2d 398, 401. In Rowell v. Jones &
Vining, Inc., (Me. 1987), 524 A.2d 1208, 1211, the Court stated:

An employer is free to set the terms and conditions of employment and compensation and the employee is free to accept or reject those conditions. We see no reason why an employer may not condition the vesting of a benefit right on some event or act in addition to the performance of services, such as continued employment until a given date.

¶45  In the instant case, Crazy Creek, through its employee handbook, set clear and unambiguous requirements for its employees to earn vacation pay. These conditions were
not unreasonable and were designed to benefit both Crazy Creek's employees and its own
business operations. Langager knew the requirements; agreed to the policy; and sought to
take advantage of her employer's vacation benefit package. She was not divested of payment
for vacation time which she had earned. Rather, by failing to comply with Crazy Creek's
paid vacation policy, Langager never earned vacation pay in the first place.

¶46   I would reverse the decision of the District Court and remand for an entry of an order
affirming the decision of the Board of Personnel Appeals. I dissent from our failure to do
so.

/S/  JAMES C. NELSON

Justices Karla M. Gray and Terry N. Trieweiler join in the foregoing special concurrence and
dissent.

/S/  KARLA M. GRAY

/S/   TERRY N. TRIEWEILER