No. 02-758

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 306

LINDA L. BALDWIN,

        Petitioner and Appellant,

    v.

BOARD OF CHIROPRACTORS, DEPARTMENT
OF COMMERCE, STATE OF MONTANA,

        Respondents and Respondents.


APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and for the County of Missoula, Cause No. DV-01-192,
                    The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Harold V. Dye, Dye & Moe, P.L.L.P., Missoula, Montana

        For Respondents:

        Lon Mitchell, Department of Labor and Industry, Helena, Montana


                                   Submitted on Briefs:  March 6, 2003

                                   Decided:  November 7, 2003

Filed:

                            _____
                                       Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 The appellant, Dr. Linda L. Baldwin (Dr. Baldwin), a chiropractor, was disciplined by the Board of Chiropractors (Board) for practicing without a license during a lapse before her license was renewed. Dr. Baldwin appealed the Board's decision to Montana's Fourth Judicial District Court. The District Court found no error in the Board's decision. Dr. Baldwin appeals. We reverse.

¶2 Dr. Baldwin raises three issues on appeal which we restate as follows:

¶3 1. Did the District Court err when it affirmed the Board of Chiropractors' decision that Dr. Baldwin failed to renew her professional license on time and that she practiced chiropractic without a license?

¶4 2. Were Dr. Baldwin's procedural due process rights violated when she was censured by the Board of Chiropractors for practicing without a license?

¶5 3. Did the District Court err when it held that willful conduct was *not* required to constitute a violation of § 37-12-301, MCA?

¶6 Because we find the first issue dispositive, we do not reach Dr. Baldwin's second and third issues.

## BACKGROUND

¶7 In August of 1998, Dr. Baldwin received a packet from the Department of Commerce (Department) regarding renewal of her chiropractic license. The Board of Chiropractors has been allocated to the Department for administrative purposes. Dr. Baldwin's chiropractic license was to expire on September 1, 1998. On August 17, 1998, Dr. Baldwin contacted Cheryl Smith (Smith), Administrator of the Board, to inquire whether mailing her renewal

2

application that day would suffice. Smith told Dr. Baldwin that mailing the packet that day would allow sufficient time to process the renewal application before her old license expired. Although Dr. Baldwin apparently put the renewal application in the mail on August 17, 1998, the Board claims it did not receive it because it was not in her file.

¶8    After seeing two patients on September 2, 1998, Dr. Baldwin called Smith to inquire whether her license had been re-issued. Smith instructed her to stop seeing patients because her license had expired. Dr. Baldwin mailed a duplicate copy of her license renewal packet to Smith that same day. The following day, September 3, 1998, Smith informed Dr. Baldwin by telephone that she needed to submit a $25.00 late fee and that she could resume her practice on September 4, 1998.

¶9    The Board initiated administrative proceedings against Dr. Baldwin, which resulted in issuance of a proposed order providing that Dr. Baldwin had engaged in "simple negligence," but that no disciplinary action was warranted. Both the Board and Dr. Baldwin filed exceptions to the proposed order. After a hearing on February 14, 2001, a final order was entered finding that Dr. Baldwin had engaged in unprofessional conduct by practicing without a license. Dr. Baldwin was placed on probation for one year and a private letter of reprimand was placed in her license file. The final order further stated that the one-year probation period had already run. Dr. Baldwin appealed the Board's final decision to the Fourth Judicial District Court. The District Court denied Dr. Baldwin's request for reversal of the Board's decision. Dr. Baldwin appeals.

STANDARD OF REVIEW

¶10   A district court reviews an administrative agency's findings of fact to determine

3

whether they are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record. *Langager v. Crazy Creek Products, Inc.*, 1998 MT 44, ¶ 13, 287 Mont. 445, ¶ 13, 954 P.2d 1169, ¶ 13; *see also* § 2-4-704, MCA. An agency's conclusion of law will be upheld by a district court if the agency's interpretation of the law is correct. *Langager*, ¶ 13. "We in turn employ the same standards when reviewing the district court's decision, and must accordingly determine whether an agency's findings of fact are clearly erroneous and whether its conclusions of law were correct." *Langager*, ¶ 13.

## DISCUSSION

¶11    Did the District Court err when it affirmed the Board of Chiropractors' decision that Dr. Baldwin failed to renew her professional license on time and that she practiced chiropractic without a license?

¶12    Section 26-1-602(24), MCA, sets forth a disputable presumption that "A letter duly directed and mailed was received in the regular course of the mail." The Board does not dispute that Dr. Baldwin mailed her renewal packet on August 17, 1998, as she claims she did; the Board simply asserts it did not receive the packet. Thus, Dr. Baldwin argues that the judgment made by the Board, and affirmed by the District Court, must be overturned because the Board failed to rebut the presumption that the packet mailed August 17, 1998, was received. She further argues that censure was inappropriate because she complied with the instructions on the renewal application, which state, "This form must be postmarked no later than September 1, 1998 to renew your license."

¶13    As the District Court articulated, however, Rule 8.12.601(1), ARM, provides that an application for renewal must be made on a form provided by the Board and completed and

4

signed by the applicant, with the signature acknowledged before a notary public. Further, Rule 8.12.601(6), ARM, provides that the Board shall notify the applicant in writing of the results of its evaluation of the application.

¶14 Whether the disputable presumption of receipt is nullified is a question for the fact finder and the presumption is to be given such weight as the fact finder thinks it is entitled. *General Mills, Inc. v. Zerbe Bro., Inc.* (1983), 207 Mont. 19, 23, 672 P.2d 1109, 1111. After reviewing the record, the District Court concluded that sufficient evidence exists to support the Board's finding that the presumption of receipt under § 26-1-602(24), MCA, was nullified, and thereby affirmed the Board's decision. The District Court reasoned that Dr. Baldwin continued to see patients after September 1, 1998, even though she "knew the Board had a statutory duty to notify her in writing of the results of its evaluation of her application . . . ."

¶15 We believe the District Court erred. In *City of Billings v. Lindell* (1989), 236 Mont. 519, 771 P.2d 134, we held that the addressee's testimony of non receipt, without additional evidence, was insufficient to overcome the presumption of receipt. In *Jones v. U.S.* (9th Cir. 1955), 226 F.2d 24, the Ninth Circuit held that the fact that the addressee's records did not show receipt was insufficient to rebut the presumption of delivery. Here, the Board offered no evidence to support its claim of non receipt other than Smith's testimony. The record is devoid of evidence that the Board utilized mail handling protocols or other office procedures that would support Smith's claim that the renewal application was never received. Furthermore, while Rule 8.12.601(6), ARM, provides that the Board shall notify the applicant in writing of the results of its evaluation of the application, it does not prohibit an

5

applicant seeking renewal from practicing chiropractic before receiving said notice.

¶16 As such, we conclude that the Board failed to adequately rebut the presumption that Dr. Baldwin's renewal application was mailed on time and received in the regular course of the mail. We hold that the District Court erred when it affirmed the Board's decision that Dr. Baldwin failed to renew her license on time and practiced chiropractic without a license.

¶17 Reversed.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART

6

Justice John Warner dissenting.

¶18    I agree with part of the reasoning of the majority of the Court. However, in my opinion, whether the Board received Dr. Baldwin's application in time to renew her license is not determinative of the issue of whether her procedural due process rights were violated when she was censured by the Board of Chiropractors for practicing without a license. Thus, I must dissent from our decision to reverse the judgment of the District Court.

¶19    The law in Montana relating to receipt of duly posted mail is as stated in the majority opinion. That is, an addressee's testimony of non-receipt, without additional evidence, is insufficient to overcome the presumption of receipt. A careful review of the record shows that there is insufficient evidence to sustain the finding of the District Court that the presumption of receipt is rebutted. The only evidence presented by the board is to the effect that it could not find the application; it has lost mail before, but not often. This is not enough to rebut the presumption.

¶20    However, finding that Dr. Baldwin properly filled out and mailed the application as required by Rule 8.12.601(1), ARM, and presuming that the Board did get Baldwin's renewal application in time to consider it and renew her license before it expired, there is still no question the Board did not renew the license before Dr. Baldwin continued her practice.

¶21    Section 37-12-301, MCA, requires a license to practice chiropractic. Rules 8.12.607(3) and 8.12.607(11), ARM, clearly state that practicing while not having a license to do so is unprofessional conduct.

¶22    The record does not show that the Board is somehow responsible for Dr. Baldwin

7

continuing to treat patients before her license was renewed. The statement on the renewal form that it had to be completed and mailed in time to be received prior to September 1, 1998, did not entitle her to assume that because the license renewal application was received it would be immediately approved. She did not receive notification of the results of the Board's evaluation of her renewal application as required by Rule 8.12.601(6), ARM, and was thus not misled into believing that her license had been renewed. Indeed, she called the office of the Board to find out why she had not received her license. The District Court found that Dr. Baldwin knew she could not practice without a license. There are sufficient facts in the record to support this finding. Such fact is not contested.

¶23 Dr. Baldwin technically violated the law, the applicable regulations, and is subject to discipline.

¶24 While we might be tempted to find that the discipline imposed was not commensurate with the offense and was too harsh, under the present circumstances what sanctions are justified for Dr. Baldwin's minor violation is a decision for the Board; not for the Courts.

¶25 The judgment of the District Court upholding the decision of the Board of Chiropractors should be affirmed.

/S/ JOHN WARNER

8

Justice Jim Rice dissenting.

¶26 I concur with Justice Warner's dissent and write to underscore the legal and logical disconnection between the Court's reasoning and its reversal of the District Court. Even assuming the Board had received Dr. Baldwin's renewal application, that receipt alone could not, and did not, renew Dr. Baldwin's license, and did not justify Dr. Baldwin's actions of practicing without a current license.

¶27 The Court fails to discuss the following conclusion of law, entered by the Board and affirmed by the District Court:

> To practice chiropractic, a person must obtain a license. A license "expires" if not renewed on time. . . . The prohibition of practicing without a license stated in Mont. Code Ann. § 37-12-301 applies to practice with no license, with an expired license, and with a terminated license. This conclusion is consistent with the description of Board Policy in the testimony of Board Administrator Smith and the first sentence of her letter (DE 1), which states, "Montana Code Annotated § 37-12-301 provides that it is unlawful to practice as a chiropractor without a current license."

The Court does not reveal why it has excused Dr. Baldwin's violation of the licensing statute, but the unstated implication from the opinion is that Dr. Baldwin is entitled to some kind of "equitable licensing" because the Board did not overcome the presumption that it received the renewal application, and, perhaps, because Dr. Baldwin telephoned the Board on August 17, 1998, to inquire about the time for filing of her application. However, that is hardly the law.

¶28 The Board's receipt of a renewal application is only "step one" of the license renewal process. After receipt, the application is then subject to (1) review for compliance with the form requirements of Rule 8.12.601(1) and (8), ARM; (2) review of the sufficiency of the applicant's continuing education, which must be Board-approved and supported by affidavit

9

pursuant to Rule 8.12.606(2), ARM; (3) a possible random audit to verify compliance with continuing education requirements, Rule 8.12.606(2), ARM; (4) compliance with the temporary requirement, effective between September 1, 1997, and September 1, 2000, and applicable to Dr. Baldwin here, to demonstrate "successful completion of a professional boundary continuing education course" under Rule 8.12.606(3), ARM, separate and apart from the continuing education requirement; and (5) following Board review for compliance with the law and Board rules pursuant to Rule 8.12.601(4), ARM, any request by the Board for "additional information or clarification of information provided in the application as it deems reasonably necessary." Thereafter, the Board will "notify the applicant in writing of the results of its *evaluation* of the application." Rule 8.12.601(6), ARM (emphasis added). Obviously, the Board's receipt of a license renewal application does not automatically entitle the applicant to a license renewal. An application must meet these requirements, and, after evaluation thereof, renewal can be approved. Thus, Dr. Baldwin's challenge to the presumption of receipt does not compel reversal of the entire process.

¶29 Further, the Board found that Dr. Baldwin's "practice of chiropractic . . . on September 2, 1998, without a current license was a violation of the rules" of professional conduct. The District Court found that Dr. Baldwin was aware of the Board's duty to notify her of the results of its evaluation of her application, and that, despite this knowledge, continued to see patients after her license had expired. Nothing in the Court's opinion changes this conclusion, or even addresses this central issue.

¶30 The Board noted Dr. Baldwin's good faith in fashioning an appropriate remedy for Dr. Baldwin's violation of the statute. As Justice Warner notes, we could debate the wisdom

of the sanction which the Board elected to impose, but that is not the issue before us.  The issue is compliance with the law, in which Dr. Baldwin failed.  For its part, the Court has failed to demonstrate otherwise, and because of that, the District Court should be affirmed.

¶31     I dissent.


                                        /S/ JIM RICE

11

Chief Justice Karla M. Gray, dissenting.

¶32     I join the dissents of Justice Warner and Justice Rice on the pivotal underlying issue in this appeal, namely, whether in a professional situation the burden is on the professional--here, Dr. Baldwin--or the licensing authority--here, the Board of Chiropractors--to ensure that a professional license is current before the professional continues to practice. When a professional license expires by its terms on a stated date, it simply must be the professional's responsibility to ensure that a renewed license has been issued or, in the event one has not been issued, to cease practicing until a renewed license has been obtained. Professionals should not need "keepers."

¶33     In the present case, Dr. Baldwin called to inquire about the status of her license on September 2. The fact is that she could--and should--have done so either on or before September 1, the date she knew her license expired and the Board had not yet notified her of the results of its evaluation pursuant to Rule 8.12.601(6), ARM. Finally, in this first regard, the Court's final sentence in ¶ 15--to the effect that the Board's failure to notify the applicant in writing of the results of its evaluation does not prohibit the applicant seeking renewal from practicing before receiving the notice--is, perhaps, technically correct. The crucial distinction not made by the Court, however, is that the prohibition against practicing results from the expiration of the old license, not from the failure to notify.

¶34     I write separately to disagree with Justice Warner, and to strongly dissent from the Court's opinion on the "disputable presumption of receipt" question. In my view, the Court

12

both improperly applies, and incorrectly interprets, our cases addressing the disputable presumption.

¶35 Reviewing the facts of the present case briefly, Baldwin's license to practice chiropractic was to expire by its terms on September 1, 1998. On August 17, 1998, she mailed her renewal packet to the Board. Baldwin practiced her profession on September 1 and 2, 1998, and her license was renewed on September 4, 1998. Baldwin subsequently received notice of proposed disciplinary action by the Board and requested a contested case hearing.

¶36 The hearing was conducted by a hearing examiner--the finder of fact in this matter. In his findings of fact, the hearing examiner found the facts set forth above. In addition, he expressly found the testimony of both Baldwin and the Administrator--who testified that she keeps records of license renewals, that she had no record of receiving Baldwin's renewal or check and that Baldwin's packet had not been received--to be credible. He also found that Baldwin's mailed envelope had never been returned to her and her check to the Board had never been cashed.

¶37 In his conclusions of law, the hearing examiner addressed the disputable presumption contained in § 26-1-602(24), MCA, that a letter duly directed and mailed was received in the regular course of the mail. He determined that, in Baldwin's case, "the presumption of receipt was overcome by evidence to the contrary." The evidence cited was the evidence set forth above. The hearing examiner's conclusion that evidence to the contrary overcame the disputable presumption implicitly incorporated his findings on the stated evidence and likely reflected an assessment that the evidence was "lost in the mail."

13

¶38 The Court interprets *Lindell* as requiring more than a mere denial of receipt to overcome the presumption. Even assuming that interpretation is correct, this record contains more evidence weighing against the presumption than mere testimony by the addressee of nonreceipt. Here, the record reflects that Baldwin's mailed envelope was never returned to her and her check to the Board was never cashed. Thus, the Court's statement that the record contains only the Administrator's testimony of nonreceipt is incorrect. Consequently, it was the province of the hearing examiner/finder of fact to give the presumption "such weight as the fact finder thinks it is entitled" under *General Mills.* The finder of fact proceeded accordingly here and determined that the presumption was outweighed and overcome. That determination is supported by the record. The Court, however, overlooks the record and its own interpretation of our cases. It simply removes the finder of fact from the equation altogether, in clear derogation of *General Mills* and *Lindell*. I cannot agree.

¶39 As stated above, however, it also is my view that the Court is improperly interpreting our case law on the disputable presumption of receipt. The thrust of *General Mills* and, indeed, cases prior to it, is that 1) there is a statutory, rebuttable presumption of receipt; 2) an addressee's positive denial of receipt does not "nullify" the presumption; but 3) such a denial leaves the determination regarding receipt to the finder of fact. The Court does not follow *General Mills*.

¶40 Perhaps the Court is misled by the unfortunate use in *General Mills* of the word "nullify," since it appears to proceed on the theory that "nullify" equals "rebut." Of course, such a theory is incorrect. According to BLACK'S LAW DICTIONARY 1095 (7th ed. 1999), nullify means "[t]o make void; to render invalid." Since the statutory presumption at issue

14

is "disputable," use of the word nullify makes little sense, except possibly to mean that mere denial of receipt does not automatically resolve the receipt issue in favor of the addressee. Indeed, *General Mills* is clear that testimony of nonreceipt renders the receipt issue a question of fact for the finder of fact; nothing in *General Mills* or *Lindell* supports the Court's determination here that testimony of nonreceipt is insufficient as a matter of law to rebut the presumption.

¶41 Moreover, "disputable"--when used as part of the term "disputable or rebuttable presumption"--means "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence." BLACK'S LAW DICTIONARY 1205 (7th ed. 1999). Applied to this case, the definition means that the disputable presumption of receipt arose as an inference from the facts surrounding Baldwin's mailing of the renewal packet. If no evidence to the contrary had been presented, receipt would have been established pursuant to the presumption. On the other hand, however, if contrary evidence is presented, as occurred in this case, the factfinder determines whether the presumption has been overcome.

¶42 Stated differently, a disputable presumption goes to the burden of production. The party asserting the presumption need not put on evidence that the mailing was actually received, and rightly so, since Baldwin could not possibly put on evidence of either receipt or nonreceipt by the Board. "A [disputable] presumption shifts the burden of production or persuasion to the opposing party, who can then attempt to overcome the presumption." BLACK'S LAW DICTIONARY 1203 (7th ed. 1999). Here, the Board came forward with evidence to overcome the presumption. Under our cases, the finder of fact then weighed the

evidence and determined that the presumption had been overcome.  That was his job, he did it, and it is my view that this Court cannot simply reweigh the evidence and substitute its judgment for that of the factfinder.

¶43     I dissent from the Court's opinion, and would affirm the District Court.


/S/ KARLA M. GRAY

Justice James C. Nelson specially concurs.

¶44    I concur in our Opinion.  I write separately to address the dissents.  Implicit in the dissents is the proposition that it is the obligation of the licensee to verify that her renewal packet was received by the Board and to monitor the renewal process to insure that the Board had processed and had renewed the applicant's license before the license expired.

¶45    I disagree.  Baldwin did exactly what the renewal application required her to do--i.e., she sent the renewal application and had it postmarked by September 1, 1998, as instructed. It is uncontradicted that Baldwin mailed the application on or about August 17, 1998, along with her check and proof of CPE credits in a properly addressed envelope with sufficient postage to the Board by regular mail.  It is also uncontradicted that the Board Administrator told her that there was sufficient time to process her renewal application. The letter was never returned, nor was the check cashed.  The hearing examiner so found in finding of fact No. 4.

¶46    Baldwin had the right to rely on the Board Administrator's representations that her renewal application would be timely processed and, implicitly, would be returned to her within the required time frames.  Baldwin also had the right to rely on the statutory presumption of delivery or the "mail rule"--§ 26-1-602(24), MCA--which has been a part of Montana's black-letter law since 1895.  Indeed, that is why there is a presumption.  People using the United State's mail are entitled to presume that mail properly addressed with postage prepaid will be delivered to the addressee in due course.  And, that is why our case law has, for decades, required more evidence than the addressee's self-serving "I didn't get

17

it" to overcome the presumption. The wisdom of this rule is manifest in this case in that there is evidence demonstrating a lack of integrity in the Board's filing processes. Just as important, there is nothing in the record of this case to indicate that Baldwin did anything wrong in attempting to obtain the renewal of her license. She followed the Board's written and verbal directions explicitly. Rather, what is evident is that the renewal process failed from the licensing authority's end.

¶47    It is easy to argue, with 20/20 hindsight, that Baldwin should have checked with the Board when her renewed license did not arrive before the expiration of her current license. But, it makes just as much sense to conclude that Baldwin, relying on the Board Administrator's representations and the mail rule, appropriately assumed that her renewed license was being returned in the mail and would arrive shortly. Indeed, had the Board renewed Baldwin's license on the day before or day of expiration and had the Administrator put the renewal in the mail, the renewed license would likely not have reached Baldwin before her license expired in any event. Yet, in that instance, she would not have been subject to discipline.

¶48    There was nothing about Baldwin's license renewal that would have led her to believe that this renewal was anything more than a routine procedure. Most professionals in Baldwin's position--she was already licensed and in good standing--would have no reason to question whether the Board was going to renew the license; and there is nothing in the record of this case that would have or should have put Baldwin on notice that her license renewal was going to be problematic.

¶49    The real point to be made here is that if the Board wants to make it the applicant's obligation to ride herd on the bureaucratic process of license renewal, then it is the Board's obligation to formalize that requirement through the rule-making process. See, *State v. Vainio*, 2001 MT 220, 306 Mont. 439, 35 P.3d 948 (holding that a licensed professional could not be sanctioned for violating an informal agency policy that had not been adopted in compliance with the Montana Administrative Procedure Act (MAPA), Title 2, Chapter 4, Montana Code Annotated).

¶50    The dissents exalt form over substance. On the facts of this case, Baldwin does not deserve to have her professional career record indelibly blemished because the bureaucratic process failed.

/S/ JAMES C. NELSON